**In re the Detention of Elroy MORROW, Appellant.**

No. 99–0846.

Supreme Court of Iowa.

Sept. 7, 2000.

Kent A. Simmons, Davenport, for appellant.

Thomas J. Miller, Attorney General, and Scott D. Brown and Roxann M. Ryan, Assistant Attorneys General, for appellee State.

TERNUS, Justice.

The appellant, Elroy Morrow, appeals an order committing him to the custody of the director of the Iowa Department of Human Services for treatment under Iowa Code chapter 229A, Iowa's Sexually Violent Predator Act. Morrow makes two arguments on appeal: (1) he contends the Act violates his right to equal protection; and (2) he asserts the trial process established by the Act violates his right to due process. We find no merit in these arguments and, therefore, we affirm.

I. *Statutory Framework.*

Before we discuss Morrow's claims, it is helpful to briefly review the pertinent parts of chapter 229A. Chapter 229A allows the State to seek a court order committing a presently-confined sexually violent predator to the custody of the Department of Human Services (DHS) for control, care, and treatment. *See* Iowa Code §§ 229A.4, .7. The Act defines a "sexually violent predator" as

a person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses, if not confined in a secure facility.

*Id.* § 229A.2(8). "Mental abnormality" is defined in the statute as

a congenital or acquired condition affecting the emotional or volitional capacity of a person and predisposing that person to commit sexually violent offenses to a degree which would constitute a menace to the health and safety of others.

*Id.* § 229A.2(3).

Upon the filing of a petition, the court must make a preliminary determination that probable cause exists to believe that the respondent named in the petition is a sexually violent predator. *See id.* § 229A.5(1). If a preliminary determination of probable cause is made, the respondent is notified of the petition and a probable cause hearing is held. *See id.* § 229A.5(1)-(2). If, after hearing, the court finds probable cause to exist, the court must direct that the respondent be transferred to an appropriate secure facility for evaluation. *See id.* § 229A.5(5).

A trial to determine whether the respondent is a sexually violent predator is required within sixty days of the probable cause hearing. *See id.* § 229A.7(2). "The respondent, the attorney general, or the judge shall have the right to demand that the trial be before a jury." *Id.* At trial, the State must establish beyond a reasonable doubt that the respondent is a sexually violent predator. *See id.* § 229A.7(3). If such a finding is made, the court must commit the respondent to the custody of DHS "for control, care, and treatment until such time as the person's

mental abnormality has so changed that the person is safe to be at large." *Id.*

## II. *Background Facts and Proceedings.*

Morrow was convicted in 1993 of sexual abuse in the third degree. The victim of the abuse was an unrelated thirteen-year-old boy. Morrow was incarcerated for this offense with a scheduled release date of August 24, 1998.

Prior to his scheduled release, the State filed a petition in the district court alleging Morrow is a sexually violent predator as defined in chapter 229A. The State asked the court to order Morrow committed for control, care, and treatment pursuant to the provisions of chapter 229A until such time as he is safe to be returned to the community at large. After a determination was made that probable cause existed to believe that Morrow was a sexually violent predator, the court ordered that he be detained in the county jail upon his release from prison, pending trial on the State's petition.

Prior to trial, Morrow filed pre-trial motions raising several claims. Two of those claims are asserted on appeal. First, Morrow claimed that his right to equal protection was violated because the Act singled out sexually violent predators on the basis of perceived future dangerousness, whereas a large portion of the prison population were equally prone to violence and recidivism upon release. He also argued that the statute's focus on prior crimes and bad acts, combined with the statutory provision allowing the State to demand a jury trial, was fundamentally unfair, violating his right to due process. The district court found no merit in these claims and the case proceeded to trial.

At the time scheduled for trial, the parties informed the court that they had agreed to submit the case on a stipulated factual record. In view of the stipulated record, the State withdrew its prior request for a jury trial. The State then submitted the following evidence, without objection from the respondent: (1) evidence of Morrow's prior convictions of sexually violent offenses; (2) an expert evaluation of Morrow; (3) affidavits from the victims regarding their sexual contact with Morrow; (4) an affidavit from a correctional counselor that Morrow did not complete the sex offender treatment program while incarcerated; and (5) the transcript from the probable cause hearing, which included the expert's testimony.

Based on this record, the district court held that Morrow was a sexually violent predator. The court ordered that he be committed to the custody of the director of DHS until such time as his mental abnormality had so changed that he was safe to be at large. Morrow filed this appeal.

## III. *Does Chapter 229A Violate Morrow's Right to Equal Protection?*

■ A. *General principles governing our review.* This court reviews constitutional claims de novo. *See Callender v. Skiles,* 591 N.W.2d 182, 184 (Iowa 1999). Statutes are cloaked with a strong presumption of constitutionality and, thus, a party challenging a statute "carries a heavy burden" of rebutting this presumption. *Glowacki v. State Bd. of Medical Exam'rs,* 501 N.W.2d 539, 541 (Iowa 1993). " 'A person challenging a statute must negate every reasonable basis upon which the statute could be upheld as constitutional.' " *Id.* (quoting *Schroeder Oil Co. v. Iowa State Dep't of Revenue & Fin.,* 458 N.W.2d 602, 603 (Iowa 1990)).

■ B. *Principles of equal protection.* The United States and Iowa Constitutions guarantee the equal protection of the law to all persons. *See* U.S. Const. amend. XIV, § 1; Iowa Const. art. I, § 6. "We apply the same analysis in considering the state equal protection claim as we do in considering the federal equal protection claim." *State v. Ceaser,* 585 N.W.2d 192, 196 (Iowa 1998).

■ The Equal Protection Clause essentially requires that similarly-situated persons be treated alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313, 320 (1985); *Ceaser*, 585 N.W.2d at 196. If people are not similarly situated, their dissimilar treatment does not violate equal protection. *See Bruns v. State*, 503 N.W.2d 607, 610 (Iowa 1993); *Hack v. Auger*, 228 N.W.2d 42, 43 (Iowa 1975). To meet constitutional standards, it is sufficient if all members of the same class be treated the same. *See Hack*, 228 N.W.2d at 43.

■ The classification itself must, however, be reasonable.[1] *See id.* The following discussion summarizes the appropriate analysis in determining the reasonableness of a classification:

> A classification is reasonable if it is "based upon some apparent difference in situation or circumstances of the subjects placed within one class or the other which establishes the necessity or propriety of distinction between them." A classification "does not deny equal protection simply because in practice it results in some inequality; practical problems of government permit rough accommodations. . . ."

*State v. Mann*, 602 N.W.2d 785, 792 (Iowa 1999) (citations omitted). "The legislature is given wide discretion in defining the limits of classes when a statute involves classification of persons or things." *State v. Hall*, 227 N.W.2d 192, 194 (Iowa 1975).

■ C. *Application of law to facts.* We turn now to a determination of whether Morrow is similarly situated to others who are not subject to the commitment procedures of chapter 229A. Morrow claims that he is treated differently than other "violent offenders with . . . antisocial personality disorder[s] who have served their prison sentences and are due for release." We conclude, however, that sexually violent predators are not similarly situated to other violent offenders.

In order to be committed under chapter 229A, a person must (1) be convicted of or charged with a sexually violent offense, (2) suffer from a mental abnormality, and (3) be likely to engage in predatory acts constituting sexually violent offenses if not confined. *See* Iowa Code § 229A.2(8). Although Morrow argues that the "same findings could be made upon any other group of violent offenders," this conclusion is not true. If the same findings could be made, the person would fall within the class of a sexually violent predator and be subject to chapter 229A. It is true that other prisoners may have committed violent offenses, may suffer from a mental disorder, and may be likely to repeat their prior offenses, but such prisoners are still dissimilar because their offenses are not sexual in nature. This difference in the nature of the prisoners' offenses is an adequate basis upon which to conclude that sexually violent predators and other violent offenders are not similarly situated and may be treated differently without violating the Equal Protection Clause.

---

1. Although the respondent conceded in the district court that his equal protection challenge was subject to review under a rational basis standard, on appeal he claims that the statute impinges on a fundamental right and therefore must be reviewed under a standard of strict scrutiny. The respondent's equal protection claim was argued to the district court and ruled upon by the district court on the basis of the rational relationship test. To now apply a strict scrutiny standard would require the State, after the record has been made in the district court, to show a compelling interest to justify the classification. It would be contrary to our principles of error preservation to consider for the first time on appeal the respondent's argument that his claim should be considered under a different standard. Therefore, we hold that the respondent's claim for a heightened standard of review was not preserved. *See Heller v. Doe*, 509 U.S. 312, 319, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257, 269–70 (1993) (refusing to determine whether strict scrutiny standard applied to review of involuntary commitment statute because the respondent had argued in the lower courts that the statutory scheme was subject to a rational basis review). Consequently, we apply a rational basis test.

*See In re Hay,* 263 Kan. 822, 953 P.2d 666, 675 (1998) (rejecting equal protection challenge to similar statute, holding that "there exist clear distinctions between this class [of sexually violent predators] and other classes which are not similarly treated"); *In re Blodgett,* 510 N.W.2d 910, 917 (Minn.1994) (rejecting equal protection challenge to similar statute, noting that there are "genuine and substantial distinctions" between the sexual predator and other criminal recidivist types, such as murderers and arsonists).

In addition, we think the classification of sexually violent predators is reasonable. The legislature, in enacting the Sexually Violent Predator Act, found that such persons were "a small but extremely dangerous group" who were not amenable "to existing mental illness treatment modalities." Iowa Code § 229A.1. The general assembly also found "that sexually violent predators' likelihood of engaging in repeat acts of predatory sexual violence is high and that the existing involuntary commitment procedure under chapter 229 is inadequate." *Id.* The legislature is free to single out sexually violent predators from other violent offenders. The particularly devastating effects of sexual crimes on victims, and the offenders' need for specialized treatment provide a rational basis for the classification. *See State v. Post,* 197 Wis.2d 279, 541 N.W.2d 115, 130 (1995) (upholding similar statute against equal protection challenge, noting "the heightened level of dangerousness and the unique treatment needs of sexually violent persons" as distinctions justifying the classification).

The fact that the Act does not address potentially similar problems with other violent offenders does not detract from the reasonableness of the current classification. *See In re Hay,* 953 P.2d at 675; *see also Martin v. Reinstein,* 195 Ariz. 293, 987 P.2d 779, 798 (Ct.App.1999) (upholding similar statute against equal protection challenge, finding it reasonable to treat sexually violent predators differently than persons suffering from other mental disorders committed under existing involuntary commitment procedures); *see generally Minnesota ex rel. Pearson v. Probate Ct.,* 309 U.S. 270, 275, 60 S.Ct. 523, 526, 84 L.Ed. 744, 750 (1940) (stating that "the legislature is free to recognize degrees of harm, and it may confine restrictions to those classes of cases where the need is deemed to be clearest"). The discussion of the Kansas Supreme Court is particularly enlightening:

The legislature has broad constitutional authority to adopt statutory programs to confine and treat people who might be dangerous to themselves or others and who suffer from some mental ailment, whether a mental abnormality, a personality disorder, or a mental illness as statutorily defined. The legislature, however, is under no duty to act to the fullest extent of its authority.

The Act focuses on the narrow problem of mental abnormality and violent predatory sex crimes. The legislative history shows the target group was a small number of habitual sex offenders, who, because of their psychological makeup, pose an immediate danger to the public.

Equal protection of the law does not require the State to choose between attacking every aspect of public danger or not attacking any part of the danger at all.

*In re Hay,* 953 P.2d at 675.

Similarly here, the Iowa legislature focused on the risks of recidivism by sexually violent predators. The legislature was not required to enact a law that encompassed the risks of recidivism by all violent criminals. Consequently, the classification of sexually violent predators is reasonable and does not violate the Equal Protection Clause.

**IV.** *Does Chapter 229A Violate Morrow's Right to Due Process?*

▌ "Due process requires fundamental fairness in a judicial proceeding."

*In re R.B.,* 493 N.W.2d 897, 898 (Iowa App.1992). Morrow claims that it was impossible for him to have a fair trial before a jury in view of the evidence that he had committed sexually violent offenses in the past. He argues that a jury would find him to be a sexually violent predator "on the basis of [his] bad character."

 "Litigants cannot challenge the constitutionality of a statute unless they can show they have been injured by it." *Norland v. Grinnell Mut. Reinsurance Co.,* 578 N.W.2d 239, 241 (Iowa 1998). Here, the State withdrew its jury demand and the respondent's trial was to the court. Accordingly, the respondent cannot show that he was injured by the provision in the statute allowing a jury trial at the State's request. No evidence of prior bad acts or prior convictions was placed before a jury and, therefore, the respondent was not subjected to the asserted risk that the jury would misuse such evidence.

Moreover, Morrow's due process claim cannot be saved on the ground that the possibility of a jury trial caused him to agree to a trial on a stipulated record in exchange for the State's waiver of a jury. At trial, the respondent's attorney stated: "After reviewing the record in total, including the great number of documents that [the State] provided from the Department of Corrections, I concluded that even though the standard is proof beyond a reasonable doubt, no sufficient defense could be raised to the facts, and that is another reason we're stipulating here today." Morrow also acknowledges in his brief that one of the reasons he agreed to a trial on stipulated facts was to protect his privacy.

It is also clear the respondent has never contended the risk that evidence of prior bad acts and convictions would be misused existed in a bench trial. As the respondent acknowledges in his brief, "A judge . . . is experienced in weighing the effect of prior acts on the present elements at issue."

In view of the procedural history of this case, we conclude that the respondent has not been injured by the statute's provision for a jury trial at the State's request. Therefore, he cannot challenge the constitutionality of chapter 229A on this basis.

**AFFIRMED.**

All justices concur except NEUMAN, J., who takes no part.